USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-2280 UNITED STATES OF AMERICA, Appellee, v. MANUEL GONZALEZ-GONZALEZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Lynch, Circuit Judge, _____________ Coffin and Cyr, Senior Circuit Judges. _____________________ ____________________ Laura H. Parsky, Trial Attorney, with whom John C. Keeney, Acting _______________ ______________ Assistant Attorney General, and Theresa M.B. Van Vliet, Chief of the ______________________ Narcotics and Dangerous Drugs Section, Department of Justice, were on brief, for appellee. Lawrence E. Besser for appellant. __________________ Manuel Gonzalez-Gonzalez on brief pro se. ________________________ ____________________ February 5, 1998 ____________________ LYNCH, Circuit Judge. Manuel Gonzalez-Gonzalez was LYNCH, Circuit Judge _____________ convicted of a major drug smuggling and money laundering conspiracy based in Puerto Rico. Gonzalez' defense at trial was that such a conspiracy did exist, but that he was not part of it. Gonzalez now argues through counsel that an admittedly improper definition of reasonable doubt argued by the prosecutor in closing requires a new trial, as does a jury instruction on the effect of a guilty plea by a co- defendant. Gonzalez also filed a brief pro se, arguing that the district court erred for other reasons in denying his motion for a new trial. We affirm. I. Gonzalez was charged on November 2, 1994 with conspiracy to possess with intent to distribute cocaine and marijuana, possession with intent to distribute marijuana, possession with intent to distribute cocaine, importation of marijuana and cocaine, and aiding and abetting in the laundering of monetary instruments. After a nineteen-day trial, the jury found Gonzalez guilty as charged. Gonzalez was sentenced on September 20, 1996 to life imprisonment and was fined. Because this appeal involves admittedly improper remarks by the prosecutor, and because the verdict could have been tainted by these remarks, we do not consider the facts in the light most favorable to the jury's verdict. Our description of the facts is "designed to provide a balanced picture of the evidence appropriate for determining whether the remarks were harmless or prejudicial." United States v. _____________ Hardy, 37 F.3d 753, 755 (1st Cir. 1994). See Arrieta- _____ ___ ________ Agressot v. United States, 3 F.3d 525, 528 (1st Cir. 1993). ________ _____________ Several witnesses testified that they belonged to Gonzalez' drug smuggling and money laundering operation. This extensive testimonial evidence was corroborated by tape recorded conversations, surveillance photographs, passport entries, travel records, and telephone records. Ricardo Rivero ("Rivero") testified that Gonzalez recruited him to retrieve and repackage 900 pounds of marijuana imported from Colombia in 1991. Rivero testified that Gonzalez stored cocaine and marijuana at a house belonging to Manuel Garrido, which other witnesses, a co-defendant and an FBI agent, subsequently confirmed. Gonzalez transported 125 kilograms of cocaine from Puerto Rico to New York for distribution with help from Rivero. Gonzalez also hired Roberto Garraton-Rivera and Alberto Maysonet to transport cocaine. Garraton testified that Gonzalez came to his house to deliver cocaine to Maysonet. Garraton and Maysonet traveled to New York in August of 1991 to deliver cocaine to Gonzalez. While in New York, Gonzalez instructed Ricardo on how to distribute the cocaine and resolved a dispute over payment for the drugs. -3- 3 After the success of this deal, Gonzalez purchased several cars before returning to Puerto Rico. Witnesses described other drug transactions in 1992. Co-defendant Luz Marina-Giraldo testified that she helped Gonzalez import 6,500 pounds of marijuana into Puerto Rico. Gonzalez stored the marijuana at a stash house and sold it in Puerto Rico. Rivero also testified about that marijuana shipment. According to Rivero, Gonzalez supervised the unloading and transportation of the marijuana. Both Rivero and Marina-Giraldo testified that Gonzalez was involved in transporting 300 kilograms of cocaine from St. Martin to Puerto Rico in 1992. These witnesses also testified about a major shipment of cocaine and marijuana Gonzalez had imported from Colombia to Puerto Rico in September of 1992. Part of this shipment was seized by the police. Several witnesses testified that they helped Gonzalez' cousin, Augustin Rivero ("Augustin"), import 625 kilograms of cocaine in November of 1992. Ricardo Rivero testified that Gonzalez supplied a motor for a boat to help bring in the shipment. Roberto Sierra-Rivera, a paid informant, testified that Gonzalez provided surveillance for this shipment, which was later sold in Puerto Rico and New York. Sierra-Rivera testified that Gonzalez and Augustin agreed that each time one of them brought in a load of -4- 4 cocaine, the other would be given 10 kilograms of cocaine or $100,000. There was also testimony about later cocaine smuggling operations conducted by Gonzalez' cousin Augustin. Angel Santiago-Mora, a cooperating witness, and Martin Suarez, an FBI agent, testified that Gonzalez and his associates often delivered money to them to be laundered. On several separate occasions Gonzalez delivered hundreds of thousands of dollars to them. Other people closely connected to Gonzalez also delivered substantial sums of money to be laundered. The government also presented tape recordings of conversations between Gonzalez and his associates in which Gonzalez admitted his involvement in drug smuggling and distribution. This evidence was supplemented by tapes of Gonzalez' associates referring to Gonzalez' involvement in drug trafficking.  Gonzalez testified and denied it all. II. Gonzalez argues that he was deprived of his Sixth Amendment right to a jury trial because in the prosecutor's closing argument the prosecutor said: [Y]ou heard [defense counsel] say at the end of his argument, that there was reasonable doubt as to whether he was or was not and I am going to tell you something, you will listen to the instructions from the judge as to what reasonable doubt is -- it is something very simple. If in your mind you think that he was a member of the -5- 5 organization, and in your heart, you feel that he was a member of the organization, then he was a member of the organization, and you say so with your verdict. Don't let yourselves be confused by the definition of reasonable doubt. The government appropriately concedes that the prosecutor's remarks incorrectly defined reasonable doubt. Because there was no objection to these remarks (which the defendant concedes), we apply a plain error standard of review. See ___ United States v. Crochiere, 129 F.3d 233, 237 (1st Cir. ______________ _________ 1997); United States v. Taylor, 54 F.3d 967, 972-73 (1st Cir. ______________ ______ 1995). The "decision to correct the forfeited error [is] within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings.'" United States v. ______________ Olano, 507 U.S. 725, 732 (1993) (quoting United States v. _____ ______________ Young, 470 U.S. 1, 15 (1985)). _____ Gonzalez relies on a series of cases holding that jury instructions which misstate the reasonable doubt standard require a new trial. He argues that the prosecutor's comments on reasonable doubt are the "functional equivalent" of jury instructions, especially since the prosecutor followed his incorrect definition with a statement that the jury should not be confused by the definition of reasonable doubt. Gonzalez argues that the prosecutor -6- 6 essentially told the jury to ignore the judge's instructions on reasonable doubt and to follow his "mind and heart" test instead. We start with the latter contention. The remark, "Don't let yourselves be confused by the definition of reasonable doubt" is ambiguous, and could have at least three meanings. It could mean "Don't be confused by the definition that I, the prosecutor, have just told you." It could mean, "Don't be confused by the definition you hear from either lawyer." And it could mean, "Don't be confused by the definition you hear from the judge," with the implication that the prosecutor's definition governs. In context, the third meaning is by far the least likely of the three.1 The prosecutor prefaced his remarks by telling the jury to listen to the judge's instructions, and his statement that the jury should not be confused by the definition of reasonable doubt is subject to benign interpretation. Furthermore, the prosecutor concluded his argument by stating, "You will listen to the instructions of  ____________________ 1 We note but need not resort to the rule that when a prosecutor's comments are ambiguous, and there is no contemporaneous objection, the ambiguity is construed in favor of a proper meaning. See Taylor, 54 F.3d at 979 ("[W]hen the target ___ ______ of the comments does not interrupt and register a timely objection, it seems especially appropriate to 'give the arguer the benefit of every plausible interpretation of her words.' . . . Given the absence of a contemporaneous objection, we must cede to the government the benefit of a legitimate, plausible interpretation of the prosecutor's words.") (quoting United ______ States v. Sepulveda, 15 F.3d 1161, 1187 (1st Cir. 1993)). ______ _________ -7- 7 the Honorable Judge, as he explains them to you, you will decide what the facts in this case were [and] you will apply the law . . . ." The prosecutor's own comments went a long way toward curing any understanding of the comment as an admonition to ignore the court's instruction. The problem with the prosecutor's error was obviated by the court's instructions on reasonable doubt, which Gonzalez concedes were correct, as well as the court's admonition to the jurors that instructions on the law come only from the court, and not from counsel.  We flatly reject Gonzalez' argument that a misstatement of the law by a prosecutor should be treated the same way as a misstatement of law by the judge. No juror would mistake a prosecutor for a judge. Our law assumes that the jurors follow jury instructions and thus that they followed the judge's, not counsel's, definition of reasonable doubt. See United States v. Rivera-Gomez, 67 F.3d 993, 999 ___ _____________ ____________ (1st Cir. 1995) ("[O]ur system of trial by jury is premised on the assumption that jurors will scrupulously follow the court's instructions."); Refuse & Envtl. Sys., Inc. v. ______________________________ Industrial Serv. of Am., Inc., 932 F.2d 37, 40 (1st Cir. _______________________________ 1991) ("A basic premise of our jury system is that the jury follows the court's instructions."). That assumption is especially so here, since the prosecutor also told the jury to listen to the judge. -8- 8 Whether the prosecutor's remarks amount to plain error warranting a new trial depends on analysis of several factors: "(1) the extent to which the conduct is recurrent and/or deliberate; (2) the extent to which the trial judge's instructions insulated the jury against, or palliated, the possibility of unfair prejudice; and (3) the overall strength of the prosecution's case, with particular regard to the likelihood that any prejudice might have affected the jury's judgment." Taylor, 54 F.3d at 977.  ______ We make no determination on the first of the Taylor ______ factors. We do note a long history of improper statements in closing argument from federal prosecutors in Puerto Rico. See, e.g., United States v. Rodriguez-Carmona, 111 F.3d 122, __________ _____________ _________________ 1997 WL 157738, at *4 (1st Cir. 1997); United States v. _____________ Fernandez, 94 F.3d 640, 1996 WL 469009, at *17 (1st Cir. _________ 1996); United States v. Cartagena-Carrasquillo, 70 F.3d 706, _____________ ______________________ 713 (1st Cir. 1995); United States v. Levy-Cordero, 67 F.3d _____________ ____________ 1002, 1009 (1st Cir. 1995); Arrieta-Agressot, 3 F.3d at 527 ________________ (citing cases); United States v. Ortiz-Arrigoita, 996 F.2d ______________ _______________ 436, 441 (1st Cir. 1993) ("We do not understand, however, why after numerous warnings from this court, the prosecuting attorneys in the District of Puerto Rico persist in spiking their arguments with comments that put their cases at risk.") (collecting cases). In light of this history, the government gains no advantage under the first factor.  -9- 9 As to the second factor, we are persuaded the jury was not led astray. That is because of the court's concededly correct jury instructions on reasonable doubt and the direction to disregard statements about the law from counsel. As to the third factor, the government had a very strong case against Gonzalez. Given these considerations, we do not think the jury's judgment was affected and a new trial is not warranted. Cf. Levy-Cordero, 67 F.3d at 1008 (holding ___ ____________ that several "obviously improper" prosecutorial comments did not warrant a new trial). III. In his counselled appeal, Gonzalez says the district court committed error in its jury instructions regarding the guilty plea of co-defendant Luz Marina- Giraldo.2 Specifically, Gonzalez argues that the court's  ____________________ 2 Before Marina-Giraldo testified as a witness, the court instructed the jury: [T]he government must establish each case against each defendant separately. Now, the fact that this co-defendant is going to testify, you are going to hear from her that she did enter a plea of guilty and now she is testifying for the government. Now the fact that a co-defendant has entered a plea of guilty to the offense charged, that fact also, the entering of a plea of guilty in and of itself is not evidence of any guilt of any other of the co-defendants. I repeat that. The fact that a co-defendant has entered a plea of guilty to the offense charged is not evidence in and of itself of the guilt of any other co-defendant and I cannot emphasize that enough. -10- 10 statement that his co-defendant's guilty plea is not "in and of itself" proof of Gonzalez' guilt implies that the plea could be considered as evidence of guilt in conjunction with other evidence in the case. There was no objection to these instructions, so we apply the plain error standard of review (which Gonzalez concedes). See Taylor, 54 F.3d at 976; ___ ______ United States v. Colon-Pagan, 1 F.3d 80, 81 (1st Cir. 1993). _____________ ___________ The phrase "in and of itself," in isolation, could be understood to mean what Gonzalez posits: that standing alone, the guilty plea of a co-defendant could not be evidence of guilt of the defendant, but, in combination with such other evidence, the plea could be taken as evidence of the defendant's guilt. That is, of course, not the law, nor, we are sure, was that the trial judge's intended meaning when he gave the instructions.  ____________________ The guilty plea of Luz Marina-Giraldo may not be regarded by you as substantive evidence of the other defendant's guilt nor may you draw any inference of guilt as to the remaining co-defendants. The fact that she pled is what I am talking about, that cannot be used as evidence against the other defendants nor may you draw any inference from the fact that she pled guilty. . . .  [W]hat you cannot consider is the fact that she has entered a plea of guilty, that fact cannot be considered. It is not evidence against the other defendants and affords no inference or suggestion of guilt as to the other defendants. -11- 11 The trial judge may have relied on dicta in United ______ States v. Rivera-Santiago, 872 F.2d 1073, 1083 (1st Cir.), ______ _______________ cert. denied, 492 U.S. 910 (1989), and cert. denied, 493 U.S. ____________ ________________ 832 (1989). In describing the events at the trial, this court's opinion referred to the following language given by the trial judge as a "standard accomplice" instruction: "the fact that an accomplice has entered a plea of guilty to the offense charged is not evidence in and of itself of the guilt of any other person." The language of the instruction itself was not at issue in Rivera-Santiago3 and this Court has not _______________ ruled on the propriety of such language in an accomplice instruction. We do so now and discourage the use of such "in and of itself" language. There is no need for such language, as the pattern jury instructions from other jurisdictions make evident.4  ____________________ 3 The Fifth Circuit also described a similar "in and of itself" accomplice instruction in United States v. Abravaya, 616 _____________ ________ F.2d 250 (5th Cir. 1980). The new District Court Criminal Law Pattern Jury Instructions for this circuit do not address guilty pleas by accomplices or co-defendants. 4 The pattern instructions of other circuits are more straightforward and do not contain "in and of itself" language. For example, Sixth Circuit pattern jury instruction 7.08 reads as follows: (3) The fact that ________ has pleaded guilty to a crime is not evidence that the defendant is guilty, and you cannot consider _______________________ this against the defendant in any way. _____________________________________ The Seventh Circuit's pattern jury instruction 3.23 reads: The witness, ________, has pleaded guilty to a crime arising out of the same occurrence for which the defendant is now on trial. You may give his testimony such weight as you -12- 12 Despite the potentially misleading nature of the "in and of itself" language, a new trial is not warranted here. The district court instructions, taken as a whole, repeatedly and unequivocally told the jury not to consider the co-defendant's guilty plea as evidence of the defendant's guilt.5  ____________________ feel it deserves, keeping in mind that it must be considered with caution and great care. Moreover, his guilty plea is not to be ______________________________________ considered as evidence against the defendant. ____________________________________________ Pattern jury instruction 2.19 from the Eighth Circuit states: You have heard evidence that witness (name) has pleaded guilty to a crime which arose out of the same events for which the defendant is on trial here. You must not consider that ___________________________ guilty plea as any evidence of this _____________________________________________ defendant's guilt. You may consider that __________________ witness' guilty plea only for the purpose of determining how much, if at all, to rely upon that witness' testimony. Finally, Ninth Circuit pattern instruction 4.12 reads: The witness, _________, has pleaded guilty to a crime arising out of the same events for which the defendant is on trial. This guilty ___________ plea is not evidence against the defendant _____________________________________________ and you may consider it only in determining _____________________________________________ this witness' believability. You should _____________________________________________ consider this witness' testimony with great _____________________________________________ caution, giving it the weight you feel it _____________________________________________ deserves. ________ 5 The court also instructed the jury: Now, the case against Luz Marina-Giraldo has been disposed of and will no longer be before you. It is very important that you realize that you cannot guess or concern yourselves or speculate as to the reason for the disposition of her case. The disposition cannot and should not influence your verdict with reference to the remaining defendants that are on trial here. -13- 13 We examine jury instructions in the context of the charge as a whole to determine whether the court's  ____________________ If you recall, I think I advised you on the first day that each defendant, although being tried together, has a right to have the jury consider his case separately of the other defendants and considering the evidence that applies or that is admitted as to that defendant specifically. . . . [A]lthough [the defendants] are being tried together, you must give separate consideration to each defendant. . . . I repeat that you cannot and you must not consider the fact that Luz Marina-Giraldo is not here again and it should not enter into your deliberations. . . . [The disposition of her case] should not enter whatsoever in your deliberations as to the other two defendants. In its final instructions to the jury, the court said: [D]uring the course of the trial, I instructed you that the case against Luz Marina-Giraldo . . . [had] been disposed of, and was no longer before you. And the disposition of the case[] . . . should not influence your verdict with reference to . . . Gonzalez and you must base your verdict solely on the evidence against Mr. Gonzalez- Gonzalez. In other words, the government must establish its case against Mr. Gonzalez separately of the disposition of the cases against the other two defendants. And I also instructed you, the fact that co-defendant Luz Marina-Giraldo entered a plea of guilty to the offense charged is not evidence in and of itself of the guilt of the defendant here on trial and I cannot emphasize this enough. The guilty plea of Luz Marina-Giraldo may not be regarded by you as substantive evidence of the guilt [of] Mr. Gonzalez-Gonzalez. Nonetheless, you may give her testimony such weight as you think it deserves, keeping in mind that it must be considered with caution and great care. -14- 14 instructions require a new trial. See United States v. Rose, ___ _____________ ____ 104 F.3d 1408, 1416 (1st Cir. 1997). When we take this context into account, it is apparent that the court's instructions in this case do not warrant a new trial. We also reject Gonzalez' claim that the synergistic effect of two errors requires a new trial. IV. In his pro se brief, Gonzalez argues that the district court erred in denying his motion for a new trial.6 The motion based the request for a new trial on claimed newly discovered evidence and claimed prosecutorial misconduct, including presentation of false testimony.7 We review a trial judge's ruling on a motion for a new trial for manifest abuse of discretion. See United ___ ______ States v. Brimage, 115 F.3d 73, 79 (1st Cir. 1997). "The ______ _______ remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" United ______ States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996) (quoting ______ _______  ____________________ 6 After oral argument in this case, Gonzalez filed a letter with this court, which we accepted as a supplemental brief, raising issues in addition to those raised by his able counsel. We requested the government to file a responsive brief, which it has done. We reach the merits of Gonzalez' pro se appeal. 7 Gonzalez also complains of a factual error concerning whether the name "Lin" appeared on any of the drug packages from Loiza beach, an error contained in the transcript. At oral argument before us, the government conceded this factual error, saying the name did not appear. -15- 15 United States v. Indelicato, 611 F.2d 376, 386 (1st Cir. ______________ __________ 1979)). See United States v. Montilla-Rivera, 115 F.3d 1060 ___ _____________ _______________ (1st Cir. 1997). In a motion for a new trial based upon newly discovered evidence, the defendant must establish that "the evidence was: (i) unknown or unavailable at the time of trial, (ii) despite due diligence, (iii) material, and (iv) likely to result in an acquittal upon retrial." United ______ States v. Tibolt, 72 F.3d 965, 971 (1st Cir. 1995). But ______ ______ Gonzalez' complaints are largely about what happened at trial and were not newly discovered. The district court gave a careful explanation of its denial of Gonzalez' motion, and we affirm for the reasons stated in the court's Memorandum and Order dated December 3, 1996. We add only that the "new evidence" Gonzalez presents does not come close to "so undermin[ing] the government's case as to give rise to a 'reasonable' probability of acquittal on retrial." Tibolt, 72 F.3d at 972 (quoting ______ Sepulveda, 15 F.3d at 1220)). _________ The judgment is affirmed. _________ -16- 16