[Not for Publication]
 United States Court of Appeals
 For the First Circuit

No. 96-2271

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 TENNESSEE MORALES-MORALES,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Hector M. Laffitte, U.S. District Judge]

 Before

 Selya, Circuit Judge,

 Bownes, Senior Circuit Judge,

 and Lynch, Circuit Judge.

 Sangita Rao, Attorney, Department of Justice, with whom
Guillermo Gil, U.S. Attorney, and Louis M. Fischer, Attorney,
Department of Justice, were on brief, for appellee.
 Francisco J. Rivera-Alvarez for appellant.

April 22, 1998

Per Curiam. Tennessee Morales-Morales was convicted
after a jury trial on four counts: conspiring to possess cocaine
with intent to distribute, attempted possession of cocaine with
intent to distribute, using a communication facility in committing
a drug offense, and criminal forfeiture. For his crimes, Morales
was sentenced to 215 months of imprisonment and other penalties. 
Morales was caught by a "reverse sting" operation in which federal
agents posed as drug sellers. Morales had attempted to purchase
thirty kilograms of cocaine from the agents.
Morales alleges that four errors contaminated his trial;
none of these claims warrants extended discussion. He also
challenges his sentence. We affirm Morales' conviction and
sentence.
The evidence, viewed in the light most favorable to the
jury's verdict, see United States v. Alicea-Cardoza, 132 F.3d 1, 3
(1st Cir. 1997), is more than sufficient to sustain Morales'
conviction. The drug sale involved protracted negotiations over
several days. These negotiations were tape recorded. Morales used
an intermediary to conduct the initial negotiations with the agents,
and a fourth man retrieved the cash necessary to purchase the drugs. 
Morales was guarded by two men carrying firearms during the drug
sale, one of whom pled guilty and testified against Morales. In
addition to the federal agents participating in the sale, other
agents monitored the transaction from a distance. During the
reverse sting drug sale, Morales told a federal agent that he was
involved in smuggling drugs from Puerto Rico to New York and
Philadelphia.
1. We treat Morales' first two arguments together. Morales
argues that the district court erred in admitting into evidence the
statements of a co-conspirator and the two firearms carried by the
men guarding Morales. We review the trial court's evidentiary
rulings for abuse of discretion, and will treat a non-constitutional
error as harmless "if it is highly probable that the error did not
contribute to the verdict." United States v. Rose, 104 F.3d 1408,
1414 (1st Cir. 1997). Neither evidentiary ruling was erroneous. 
The evidence shows that a conspiracy existed embracing both the
declarant and the defendant and that the co-conspirator's statements
were made during the course of the conspiracy and in furtherance of
the conspiracy. See United States v. Sepulveda, 15 F.3d 1161, 1180
(1st Cir. 1993). As to the firearms, the district court was careful
to caution the jury that Morales was not charged with weapons
possession, and that the firearms were to be considered for the
limited purpose of determining whether Morales was receiving armed
protection, and to aid the jury's determination of the armed guard's
credibility.
2. Morales' claim that the district court's mid-trial
revocation of his bail prejudiced him amounts to pure speculation. 
After his bond was revoked, Morales was accompanied by two marshals
in the courtroom, but he remained dressed in ordinary clothing. 
Morales does not offer any evidence that the jury was aware that his
bond had been revoked.
3. Morales' claim that he was denied his right to compulsory
process is also without merit. A violation of the compulsory
process clause can be established only on a showing that the missing
witness's testimony would have been relevant, material, and
favorable. See United States v. Valenzuela-Bernal, 458 U.S. 858,
867, 872 (1982); United States v. Mount, 896 F.2d 612, 621 (1st Cir.
1990). "Indeed, the Sixth Amendment does not by its terms grant to
a criminal defendant the right to secure the attendance and
testimony of any and all witnesses: it guarantees him 'compulsory
process for obtaining witnesses in his favor.'" Valenzuela-Bernal,
458 U.S. at 867 (quoting U.S. Const. amend. VI). 
First, there is likely a procedural default. Morales,
who was on notice the afternoon before he sought the witness (a DEA
agent), never subpoenaed the witness and expressly waived a
continuance of the trial to give him time to obtain the witness.
Second, on the merits, Morales has not shown that the
witness's testimony would be relevant, material, and favorable. The
witness could have at most clarified a minor point concerning the
armed guard's interrogation after the guard's arrest, and would have
added little to the jury's assessment of the armed guard's
credibility.
4. Finally, we determine that the court did not err in
adjusting Morales' offense level upward by three levels under
U.S.S.G. 3B1.1 because Morales was a "manager or supervisor" in
a criminal activity that involved five or more participants or was
otherwise extensive. Section 3B1.1 requires "evidence that a
defendant, in committing the crime, exercised control over, or was
otherwise responsible for overseeing the activities of, at least one
other person." United States v. Voccola, 99 F.3d 37, 44 (1st Cir.
1996) (quotation marks omitted). But the defendant need not be the
leader of the scheme to receive this enhancement. See United Statesv. Goldberg, 105 F.3d 770, 777 (1st Cir. 1997). The criminal
activity for which Morales was convicted clearly involved five
people: Morales; the intermediary; the two armed guards; and the man
who retrieved the money to buy the drugs. The evidence, summarized
in the sentencing transcript, amply supports the conclusion of the
experienced trial judge that Morales supervised the activities of
these other participants.
Nor do we find any error in the district court's drug
quantity calculation. Morales negotiated a purchase of two fifteen
kilogram units of cocaine. The agreed price for the sale of thirty
kilos was $10,000 per kilo. Morales and his confederates had
brought approximately $190,000 in cash to the drug buy, more than
enough to purchase the fifteen kilos attributed to Morales.
Affirmed. See 1st Cir. Loc. R. 27.1.