# United States Court of Appeals
## For the First Circuit

---

No. 00-1564

MANUEL GONZALEZ-GONZALEZ,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

---

Before

Torruella, Selya and Lynch,

Circuit Judges.

---

Judith H. Mizner for appellant.
Lena Watkins, Trial Attorney, Narcotic and Dangerous Drug
Section, Criminal Division, United States Department of Justice,
for appellee.

---

July 23, 2001

---

**SELYA, Circuit Judge.** Challenging the constitutional sufficiency of the process employed by the government in forfeiting two motor vehicles, petitioner-appellant Manuel González-González (González) moved in the district court for recovery of the seized property. See Fed. R. Crim. P. 41(e). The district court properly treated González's Rule 41(e) motion as a civil complaint and summarily dismissed it. González appeals. Sua sponte dismissals are strong medicine, and should be dispensed sparingly. Given the circumstances of this case, a sua sponte dismissal cannot be justified. Consequently, we vacate the lower court's order and remand for further proceedings.

## I. BACKGROUND

The record is sketchy, and we paste together the facts surrounding the forfeitures as best we can. We take the controverted facts — at least, those controverted facts that are neither inherently incredible nor flatly contradicted by the record — in the light most favorable to González's theory of the case. See Estelle v. Gamble, 429 U.S. 97, 99 (1976); Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989).

A decade ago, the Federal Bureau of Investigation (FBI) mounted a full-court press in an endeavor to dismantle an extensive drug-smuggling operation headquartered in Puerto Rico.

-3-

See United States v. González-González, 136 F.3d 6, 7-8 (1st Cir. 1998) (providing an account of the ring's illegal activities and the government's response). On September 29, 1993, a federal grand jury handed up a sealed indictment that charged González and fifteen other individuals with a myriad of offenses, including importation of large quantities of cocaine and marijuana, as well as conspiracy to possess and distribute both drugs. See 21 U.S.C. §§ 841, 846, 952. The indictment also charged González with several counts of money laundering. See 18 U.S.C. § 1956. The government based four such counts, in part, on the testimony of a cooperating witness who said that González had dipped into drug proceeds to fund the purchase of four motor vehicles (two Mitsubishi Monteros and two Toyota Corollas). He added that one of González's confederates had provided false names and addresses for use in registering the vehicles.

On October 5, 1993, the district court unsealed the indictment. The FBI promptly arrested eleven of the sixteen defendants and seized the two cars at issue here — a 1993 Montero and a 1993 Corolla — from individuals residing in Trujillo Alto. The agents furnished each of these individuals with a notice that outlined the basis for the seizure and the procedure for contesting forfeiture. Subsequent appraisals

indicate that, when seized, the Montero was worth approximately $25,300 and the Corolla approximately $13,900. See 21 C.F.R. § 1316.74 (providing for post-seizure appraisals of property slated for forfeiture).

Despite the indictment, González eluded arrest. That was not surprising; in 1980, he had been indicted for narcotics offenses, but not apprehended, in the Southern District of Florida. He remained a fugitive and was convicted in absentia in the Florida case. González was still at large when the government proceeded, in the winter of 1993-1994, to effect an administrative forfeiture of the confiscated automobiles. See 21 U.S.C. § 881.

As a first step, the United States sent notice by certified mail to the persons named on the vehicles' registrations, at the addresses specified thereon. See 19 U.S.C. § 1607(a) (directing, in relevant part, that "[w]ritten notice of seizure together with information on the applicable procedures [for contesting forfeiture] shall be sent to each party who appears to have an interest in the seized article"). Each notice explained the reasons for both the seizure and the planned forfeiture, detailed the appropriate procedure for contesting forfeiture, and designated March 14, 1994 as the deadline for taking preventative action. These letters were

mailed on January 26, 1994, but there is nothing in the record to indicate whether they reached their intended destinations.

On February 13, 20, and 27, the government published a notice of the forfeiture proceedings in consecutive Sunday editions of the New York Times. See id. (requiring such publication in a newspaper of general circulation). The notice allowed thirty days from the date of the first publication within which to request relief from the planned forfeiture.[1] See 21 C.F.R. § 1316.79. On April 20, 1994, both cars were declared forfeit to the United States. See 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77(b).

The government acknowledges that it gave no personal notice to González, but asserts that FBI agents were unable to locate him until August 10, 1994 (when they finally arrested him in Miami). González demurs, alleging that the government knew all along where he was living (or, alternatively, where notice by mail could efficaciously be given to him). Moreover, testimony at González's bail hearing indicates that the government may have known his whereabouts but eschewed an arrest

_____

[1]Although the record does not contain a copy of the published notice, we take the dates of publication and the description of the text from the declaration of forfeiture. We assume, on the same basis, that the contents of the published notice complied with the applicable regulations. See 21 C.F.R. § 1316.75(b).

-6-

for some time in order to avoid compromising a related investigation.

On November 2, 1994, the government obtained a superseding indictment which, despite other modifications, left the four money laundering counts intact. On January 17, 1995, González moved to dismiss the indictment on the ground that forfeiture of the two cars constituted punishment for the offenses charged (and, therefore, that the Double Jeopardy Clause barred prosecution). The district court denied the motion. After a nineteen-day trial, a jury found González guilty on all counts and the district court sentenced him to life imprisonment. We affirmed the conviction and sentence. González-González, 136 F.3d at 7.

Nearly six years after the initial seizure of the two vehicles and more than five years after the administrative forfeiture proceedings had been completed, González filed a pro se motion for return of the automobiles or, in lieu thereof, their cash value when seized. See Fed. R. Crim. P. 41(e) (authorizing "[a] person aggrieved by an unlawful . . . seizure or by the deprivation of property" to move "for the return of the property on the ground that such person is entitled to lawful possession of [it]"). In this motion (filed on July 19, 1999), he argued that the notices of forfeiture were

-7-

constitutionally defective since the government knew his whereabouts at the time and failed to make any real effort to notify him by mail or otherwise. On August 18, 1999, the district court, acting sua sponte, rejected González's entreaty without comment. González now appeals from the court's summary denial of both his original motion for return of property and his subsequent motion for reconsideration.

## II. DISCUSSION

In the pages that follow, we limn the nature of administrative forfeiture proceedings, elaborate the notice required to satisfy due process, and verify the posture in which this appeal arises. We then resolve the instant dispute.

### A. Administrative Forfeiture Proceedings.

Congress has provided for the civil forfeiture of money or property traceable to the avails of drug trafficking. See 21 U.S.C. § 881(a)(6). To facilitate such forfeitures, Congress incorporated by explicit reference the venerable procedures for civil forfeiture set out in the customs laws. Id. § 881(d). Under this regimen, the government may forfeit property worth $500,000 or less administratively. See 19 U.S.C. § 1607. If the government chooses to travel this path, it must publish notice of its intent to forfeit the property for three

-8-

successive weeks and supplement that publication by sending written notice to any party known to have an interest in the property. Id. § 1607(a); 21 C.F.R. § 1316.75.

The giving of notice shifts the burden of going forward to those persons who persist in claiming an interest in the property. Claimants have twenty days from the first published notice within which to file claims. 19 U.S.C. § 1608. A timely claim, accompanied by a cost bond, aborts the administrative process and forces the government to proceed in court. See id.; see also 21 C.F.R. § 1316.76(b). If no interested party files such a claim, however, the government can proceed to declare the property forfeit without judicial intervention. See 19 U.S.C. § 1609.

Despite Congress's erection of this framework for administrative forfeitures, the judiciary continues to play a limited role in such matters. Pertinently, district courts retain the authority to entertain constitutional challenges to administrative forfeitures. See United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995) (per curiam); see also United States v. Mosquera, 845 F.2d 1122, 1126 (1st Cir. 1988) (per curiam) (noting that district courts have federal question jurisdiction over due process challenges to administrative forfeitures). The fact that a claimant cloaks his

constitutional challenge in the garb of a Rule 41(e) motion does not alter this reality; in that event, the court simply will treat such a motion as a civil complaint.  <u>Giraldo</u>, 45 F.3d at 511.

## B.  <u>Reasonable Notice</u>.

The Fifth Amendment to the Constitution states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V. These words require "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [a legal] action and afford them an opportunity to present their objections."  <u>Mullane</u> v. <u>Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).  Accordingly, "[t]he essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." <u>Matthews</u> v. <u>Eldridge</u> 424 U.S. 319, 348 (1976) (citation and internal quotation marks omitted).

Consistent with these precepts, due process, in the forfeiture context, minimally requires that the government provide an individual with "notice and an opportunity to be heard" before confiscating his property. <u>United States</u> v. <u>James Daniel Good Real Prop.</u>, 510 U.S. 43, 46 (1993).  Because due process is an infinitely flexible concept, there is no

infallible test for determining the adequacy of notice in any particular situation. The touchstone is reasonableness: the government must afford notice sensibly calculated to inform the interested party of the contemplated forfeiture and to offer him a fair chance to present his claim of entitlement. See Mullane, 339 U.S. at 314. Whether the notice actually given is or is not reasonable invariably depends on the circumstances of the individual case. See Garcia v. Meza, 235 F.3d 287, 291 (7th Cir. 2000); cf. Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (explaining that due process "calls for such procedural protections as the particular situation demands").

That said, the precedents shed some light on the government's obligation to notify parties in interest. For instance, the case law has begun to define what the government must do when it seeks to forfeit property belonging to a prison inmate. See Whiting v. United States, 231 F.3d 70, 76 (1st Cir. 2000) (holding sufficient notice by certified mail to both home address and place of immurement); Giraldo, 45 F.3d at 511 (noting that would-be confiscator must take affirmative steps to locate owner who is in government custody). Even fugitives may be entitled to efforts at personal notice. See United States v. Rodgers, 108 F.3d 1247, 1253-54 (10th Cir. 1997) (declaring attempted notice to fugitive unreasonable when sent to invalid

address and not sent to known residence).  The precedents also suggest the value of a pragmatic approach to issues of notice. If, say, an interested party has actual knowledge of ongoing forfeiture proceedings from other sources, inadequacies in the notice afforded by the government will not work a deprivation of due process.  Whiting, 231 F.3d at 74.

### C.  **The District Court's Order**.

Because the criminal case no longer was pending when González sought relief from forfeiture, the lower court appropriately treated González's Rule 41(e) motion as a civil complaint.  See Giraldo, 45 F.3d at 511.  Thus, the government had sixty days to reply to it.  See Fed. R. Civ. P. 12(a)(3)(A). The court, however, did not wait for the government to respond; it issued what amounted to an order of dismissal before the government acted (and well before the sixty-day deadline arrived).[2]  Consequently, we have no choice but to treat the court's summary order as a sua sponte dismissal.

---

[2]González argues that the response time had expired because the district court's local rules allow only ten days to reply to a motion.  See D.P.R. R. 311(5).  That rule, however, specifies the general response time for motions, not for civil complaints. González happily took advantage of the district court's willingness to exercise jurisdiction by treating his Rule 41(e) motion as a civil complaint, and he cannot now argue that the time limit for answering a complaint was inapposite.  After all, "[h]aving one's cake and eating it, too, is not in fashion in this circuit."  United States v. Tierney, 760 F.2d 382, 388 (1st Cir. 1985).

The type of sua sponte dismissal here at issue — a dismissal on the court's own initiative, without affording the plaintiff either notice or an opportunity to be heard — is disfavored in federal practice. If a defendant files a motion to dismiss for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), the plaintiff, as a practical matter, has notice of the motion and an opportunity to amend the complaint as of right, see Fed. R. Civ. P. 15(a). But where, as here, a court jettisons an action sua sponte, the dismissal deprives the plaintiff of these core protections. Thus, the standard for upholding such a sua sponte dismissal is more rigorous than the "failure to state a claim" standard of Rule 12(b)(6). Cf. Neitzke v. Williams, 490 U.S. 319, 327 (1989) (explaining that sua sponte dismissal under 28 U.S.C. § 1915 is warranted only if a complaint is "based on an indisputably meritless legal theory" or is "clearly baseless").

This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand. Curley v. Perry, 246 F.3d 1278, 1281-82 (10th Cir. 2001); Wyatt v. City of Boston, 35 F.3d 13, 15 n.1 (1st Cir. 1994); Smith v. Boyd, 945

-13-

F.2d 1041, 1043 (8th Cir. 1991); Shockley v. Jones, 823 F.2d 1068, 1072-73 (7th Cir. 1987). But haste makes waste, and it will be the rare case in which a sua sponte dismissal — at least, a sua sponte dismissal without leave to amend —  will be upheld. See Razzoli v. Fed. Bureau of Prisons, 230 F.2d 371, 377 (D.C. Cir. 2000); Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988); Literature, Inc. v. Quinn, 482 F.2d 372, 374 (1st Cir. 1973); see also Clorox Co. v. Proctor & Gamble Comm'l Co., 228 F.3d 24, 32 (1st Cir. 2000) (emphasizing that considerations of "basic fairness," as well as "sound prudential reasons," counsel against most uses of the power to dismiss cases sua sponte).

In short, sua sponte dismissals are risky business. We will uphold a sua sponte order of dismissal only if the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption. We must measure the district court's dismissal of González's Rule 41(e) motion by this yardstick.

### D. **The Bottom Line**.

We afford de novo review to orders for sua sponte dismissal. Cf. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998) (applying de novo review to an order of dismissal under Rule 12(b)(6)). The United States argues that the lower court's order survives such review. Its central theme

-14-

is that we should pay no heed to González's allegations because the record itself refutes them. This argument lacks force. González's allegations are reasonably specific and the nisi prius roll, in its present sparsely developed form, provides little more than food for speculation.

We need not rehearse every pertinent detail, for one example will suffice. A crucial area of dispute involves the extent of the government's knowledge, in late 1993 and early 1994, anent González's whereabouts. González has made specific assertions that the FBI knew his whereabouts all along; that, at any rate, the agents had available to them addresses at which notice might effectively have been given to him; and that the government disregarded this knowledge, preferring instead to give notice to the vehicle custodians (whom it had every reason to believe were mere straws) and to send letters to addresses that its own informant had disclosed were contrived.

The government, in its brief and at oral argument, offers a much different version of the facts. It claims that it could not locate González even to arrest him, let alone to notify him of the commencement of forfeiture proceedings, and that it did not know how to ensure that he receive personal notice. In a nutshell, the government says that it did the best that it could.

These dueling versions of the facts set the parties on a collision course. That, in turn, ends this aspect of our inquiry. While it is curious to think that the government effectively could serve notice on a fugitive, the law required the district court, before essaying a sua sponte dismissal, to assume the truth of González's fact-specific averments. If the government knew how to notify González directly and did not utilize that information, notification given in hand to the cars' custodians (known by the government to be placeholders) and mailed to the cars' registered owners (known by the government to be fictitious persons) might well fall short of the constitutional minimum, even when coupled with the publication of a notice in a newspaper that, in fairness, González was unlikely to read. See United States v. Woodall, 12 F.3d 791, 794 (8th Cir. 1993) ("When the government has actual knowledge of an interested party's whereabouts at the time forfeiture is commenced, failure to direct the statutorily required personal notice to that address cannot be considered compliance with either the statute or minimum due process standards."). Further proceedings are needed to permit a reasoned resolution of this factual conflict.

The government has a fallback position. It argues that, regardless of what the FBI knew, the record conclusively

demonstrates that González had actual notice of the seizure. Building on this foundation, the government, citing United States v. One 1987 Jeep Wrangler Auto., 972 F.2d 472, 482 (2d Cir. 1992), posits that the district court's disposition was justified because actual knowledge of a seizure precludes a notice-based constitutional challenge to an ensuing forfeiture.

We reject this proposition. Assuming, arguendo, that the government can show actual notice of the vehicles' seizure on González's part at the relevant time, the Second Circuit apparently has retreated from its earlier precedent and intimated that actual knowledge of forfeiture is required to excuse a due process shortfall. See Ikelionwu v. United States, 150 F.3d 233, 238 (2d Cir. 1998). Wholly apart from the Second Circuit's view, we ourselves believe that the actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure. See Whiting, 231 F.3d at 74 (so stating, albeit in dictum). Here, González asserts that he was not aware of the forfeiture until the end of 1994 (well after the forfeiture proceedings were complete). Because the government identifies nothing in the record which categorically contradicts that assertion, a sua sponte dismissal cannot be justified on the basis of actual knowledge.

-17-

The government makes a last-ditch effort to preserve its district court victory. Pointing to the five-and-one-quarter year gap between the forfeiture of the cars and the commencement of this action, the government asseverates that González's complaint is barred by laches. This asseveration need not detain us. Laches is an affirmative defense. K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989) (citing Fed. R. Civ. P. 8(c)). Accordingly, the burden of proving it rests with its proponent. See id. There is no principled way that the district court, without better information than it had before it in August of 1999, could grant judgment for the government on such a factbound theory.

## III. CONCLUSION

We need go no further. González invites us to declare the forfeiture void, whereas the government invites us to confirm its validity. We decline both invitations. The facts asserted in the Rule 41(e) motion, taken in the light most favorable to González, invite skepticism, but we cannot say that they reveal a patently meritless claim. That means that the district court's sua sponte order for dismissal cannot endure. It does not mean, however, that González is entitled to judgment. Since the district court foreclosed the government

from telling its side of the story, we must remand the case for further proceedings.

On remand, the court should fix a time for the government to respond to the complaint and, in due course, should determine whether, in the particular circumstances of this case, the government's efforts to notify González of the forfeiture proceedings were reasonable. If the court finds that the government's actions did not attain the constitutional minimum, the court should then consider the government's affirmative defenses (including but not limited to actual knowledge and laches). We take no view on any of these questions.

**Vacated and remanded.** **No costs.**