**Kevin VOLPE, Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Civil Action No. 06–11176–PBS.**

United States District Court, D. Massachusetts.

April 14, 2008.

Jessica Diane Hedges, Stephen B. Hrones, Michael L. Tumposky, Hrones, Garrity & Hedges, LLP, Boston, MA, for Plaintiff.

Anita Johnson, United States Attorney's Office, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

SARIS, District Judge.

## I. INTRODUCTION

Plaintiff Kevin Volpe challenges the administrative forfeiture of his money on the grounds that the government failed to provide him with any notice of the forfeiture proceedings and lacked probable cause for the forfeiture. The United States moves to dismiss on the ground that Volpe failed to meet the statutory requirements of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and this Court, therefore, lacks jurisdiction to consider Volpe's motion. *See* 18 U.S.C. § 983(e)(1). Plaintiff has moved for summary judgment. After a hearing and review of the submissions, I *DENY* the government's motion to dismiss; *DENY* Plaintiff's motion for summary judgment with respect to his challenge to the seizure on the merits; *ALLOW* Plaintiff's motion for summary judgment with respect to his challenge to notice because the notice was inadequate; and set aside the declaration of forfeiture.

## II. FACTUAL BACKGROUND

### 1. *Hard to Beer*

The record contains evidence of the following facts, which are undisputed except where stated. On October 19, 2004, a member of the Plainville police force was

patrolling in an area in Plainville, Massachusetts where narcotics transactions had previously taken place. At about 6:30 p.m., he observed Plaintiff talking on a cell phone and drinking while sitting in a parked car. Concerned that Plaintiff was inebriated, the officer inquired whether Plaintiff could get in touch with someone to drive his vehicle home. Plaintiff asked the police to leave his car and drive him to the Arbor Inn at 900 Washington Street in Wrentham. When the officer explained that he feared a break-in if valuables were left in the car, Plaintiff responded that there was nothing of value in the car other than some money in his pants pocket. The officer then looked in the passenger side window and observed several empty beer bottles. After Plaintiff admitted to drinking the beers, the officer asked him to empty his pockets and to place his hands on the steering wheel. Plaintiff produced more than eight hundred dollars in cash from his pocket that he said was from his previous week's paycheck.[1]

The officer asked Plaintiff to step out of the vehicle. After Plaintiff exited, the officer found a bulky fanny pack completely filled with cash. In response to questioning by the officer, Plaintiff explained that the money was his life savings.

A second police officer arrived and the police made arrangements for Plaintiff's car to be towed. In response to questions from the police, Plaintiff said that he made $600-$700 a week and that he had been saving for a number of years. Plaintiff was then placed in protective custody.[2] Plainville police contacted the Massachusetts State Police and requested a canine trained in narcotics detection.

The police transported Plaintiff to the Plainville Police Department. Two police officers inventoried the currency in Plaintiff's fanny pack, which contained $67,300, in addition to the $893 found in his pocket.

The parties dispute what Plaintiff said at the booking. The government insists that Plaintiff told Plainville officers at the time of his booking that his address was 21 Washington Street in Plainville, while Plaintiff contends that he gave the Plainville police the 900 Washington Street, Wrentham address. The police state that when Plaintiff was taken into custody, he had two keys in addition to his car keys: one for a motel at 21 Washington Street, Plainville, and the other for the Arbor Inn, Room 10, 900 Washington Street, Wrentham. Plaintiff contends that he only had one room key, the key to Room 10 at the Arbor Inn, and a key to a post office box.

After being advised of his rights, Plaintiff consented in writing to a search of his room at the Arbor Inn, a location known by police to be associated with drug activity. At the Arbor Inn, the police learned that Plaintiff had been the only person registered in Room Ten since January 2004. In the room, the police stated they observed only two packed suitcases. However, Plaintiff asserts that other items, such as a DVD player, food storage containers and toiletries, were visible in the room and the bathroom.

At the station, a dog annually certified in narcotics odor detection alerted to Plaintiff's fanny pack and the $67,300 in currency. The canine also alerted to the floor of Plaintiff's car where the fanny pack and the $67,300 in currency had been found and to the locked glove compart-

1. Plaintiff states that there was less than $200 in his pocket, but he agrees with the government that the total amount seized was approximately $68,000.

2. In his pleadings, Plaintiff seems to contend that he was arrested before his car was searched.

ment. A few hours later, Plaintiff was released and given a receipt for the approximately $68,000 from his pocket and fanny pack. When he asked for his money back, the police refused and took him to the Arbor Inn, Room 10.

A Plainville police officer was approached by individuals who identified themselves as Plaintiff's parents shortly after [3] Plaintiff's arrest in October 2004. He informed them that the money had been turned over to the Drug Enforcement Administration ("DEA") for the initiation of forfeiture proceedings. He provided them with information about contacting the DEA.

Plaintiff subsequently had another encounter with the Plainville Police Department in June 2005, and provided police with the Arbor Inn, 900 Washington Street, Room 10, Wrentham address. The government contends, and Plaintiff disputes, that the Plainville Police Department records now reflect this 900 Washington Street address only because Plaintiff provided it during this subsequent arrest.

### 2. *The Forfeiture*

On October 25, 2004, the DEA office in Boston adopted the seizure of Plaintiff's currency and subsequently submitted a forfeiture report detailing the grounds for administrative forfeiture. On November 26, 2004, the DEA mailed written notice of the seizure, return receipt requested, to Kevin Volpe at 21 Washington Street in Plainville, Massachusetts, the address provided by the Plainville Police Department. The letter was returned by the U.S. Postal Service marked "addressee unknown." The DEA says it then performed a search for an alternative address for Plaintiff but did not find one. The government does not disclose how this search was conducted. Notice of the seizure was published in *The Wall Street Journal* once a week for three consecutive weeks in December 2004. The notices explained the options of filing a claim with the DEA Forfeiture Counsel in order to contest the forfeiture action or filing a petition for remission or mitigation. The mailed notice set forth a December 31, 2004 deadline, and the published notice set forth the deadline if mailed notice were not received, January 19, 2005. On January 25, 2005, after the time period for filing a claim had expired, the currency was forfeited to the United States.

In November 2005, the DEA received a letter from Plaintiff's attorney arguing that Plaintiff had not received notice with respect to the seizure. In March 2006, the DEA rejected Plaintiff's allegation that notice was insufficient and informed him that the investigation was closed. The DEA asserted that the Plainville Police Department records reflected the 900 Washington Street address only because the system had been updated after Plaintiff's arrest in June 2005. Plaintiff then filed a motion for return of seized property pursuant to Fed.R.Crim.P. 41(g), initiating this litigation. On September 8, 2006, the DEA performed a search through Accurint, a Lexis Nexis owned database, and Autotrack, another commercial public record database, which reflected that Plaintiff had an address at 21 Washington Street, Plainville as of October 2004. These databases did not show the 900 Washington Street address.

### III. DISCUSSION

### 1. *Standard of Review*

The government asks this court to dismiss Plaintiff's motion for return of prop-

---

**3.** There is some dispute as to the amount of time that elapsed between the seizure and this conversation.

erty for lack of subject matter jurisdiction. Both parties have submitted affidavits and other evidence for the record. When evaluating a 12(b)(1) motion to dismiss, the court may conduct a "broad inquiry" and may consider extrinsic materials, including exhibits attached to the pleadings and the evidentiary materials submitted by the parties. *Hernandez–Santiago v. Ecolab, Inc.*, 397 F.3d 30, 33 (1st Cir.2005); *see also Patterson v. United States*, 372 F.Supp.2d 195, 199 (D.Mass.2005), *aff'd*, 451 F.3d 268 (1st Cir.2006) (quoting *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir.2000)). "In doing so, this court does not convert the motion to dismiss into a motion for summary judgment." *Patterson*, 372 F.Supp.2d at 199.

Plaintiff has moved for summary judgment. Considering the "facts and the reasonable inferences therefrom in the light most favorable to the nonmoving party," *Freadman v. Metro. Prop. and Cas. Ins. Co.*, 484 F.3d 91, 94 (1st Cir.2007), summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank

speculation." *Ingram v. Brink's, Inc.*, 414 F.3d 222, 228–29 (1st Cir.2005).

### 2. *The Statutory Scheme*

Federal law provides for the forfeiture of moneys "traceable" to drug trafficking.[4] Property worth $500,000 or less is subject to administrative forfeiture without judicial involvement. *See* 19 U.S.C. § 1607. The government is required to serve written notice of seizure and information on the applicable procedures on interested parties. *See id.* § 1607(a). The government is required to publish notice of its intent to forfeit the property once a week for three successive weeks and to send written notice to any party known to have an interest in the property. *See id.*; *see also* 21 C.F.R. § 1316.75. Where, as in this case, property is seized by a local law enforcement official, and then turned over to a Federal law enforcement agency, notice shall be sent not more than 90 days after the date of seizure by the local law enforcement agency. *See* 18 U.S.C. § 983(a)(1)(A)(iv).

A person claiming the property seized may file a claim not later than the deadline set forth in a personal notice letter, except that if the letter is not received, he may file a claim not later than 30 days after the date of the final publication of notice of seizure. *See* 18 U.S.C. § 983(a)(2)(B). Once a claim is filed, the administrative proceedings are halted and, if the government wishes to pursue the forfeiture, it must file suit in federal court. *See id.* § 983(a)(3)(A). If no claim is filed, however, the government may simply declare the property forfeited. *See* 19 U.S.C. § 1609.

---

4. "The following shall be subject to forfeiture to the United States and no property right shall exist in them:

 . . .

All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6).

Under CAFRA, a claimant is entitled to judicial relief if he did not receive adequate notice in a completed forfeiture proceeding. CAFRA provides:

(e) Motion to set aside forfeiture.—

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

(2)(A) Notwithstanding the expiration of any applicable statute of limitations, if the court grants a motion under paragraph (1), the court shall set aside the declaration of forfeiture as to the interest of the moving party without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party.

18 U.S.C. § 983(e). This statute provides the "exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." *Id.* § 983(e)(5).

The government argues that the Court should not set aside the declaration of forfeiture because Plaintiff had knowledge of the seizure of his money by the police and had sufficient time to file a timely claim. *See United States v. Russell,* 2006 WL 2786883, at *3 (M.D.Ala. Sept. 27, 2006) (because claimant "appears to have known of the seizure on the date that it occurred ... the court cannot conclude that the requirements of 18 U.S.C. § 983(e)(1) have been met."). As proof, the government points out that the Plainville Police told Plaintiff that his money would not be released; told his parents that the currency had been turned over to the DEA; and provided them with the DEA contact information. Under 18 U.S.C. § 981(b)(2)(C), the United States may seize property if "the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency." Plaintiff plainly had knowledge of the seizure of his money by the local police—he was present—but he contends that he did not have knowledge of the commencement of the DEA forfeiture proceedings, and did not have sufficient opportunity to file a timely claim. Even though Plaintiff found out from his parents that the money had been turned over to the DEA in Washington, it is undisputed that the DEA failed to give him written notice of the commencement of forfeiture proceedings and information about how to make a claim.

 The legal question, then, is whether notice of a seizure alone is sufficient to meet the requirements of the due process clause. Although Plaintiff does not have a remedy under CAFRA, "district courts retain the authority to entertain constitutional challenges to administrative forfeitures." *Gonzalez–Gonzalez v. United States,* 257 F.3d 31, 35 (1st Cir.2001) (involving a pre-CAFRA forfeiture). The First Circuit has held that notification procedures set forth in rules "neither trump nor displace the constitutional requirement that the government afford an individual notice sufficient to satisfy the demands of due process before confiscating that individual's property through the instrumentality of a judicial forfeiture." *United States v. One Star Class Sloop Sailboat,* 458 F.3d 16, 22 (1st Cir.2006) (involving a judicial for-

feiture). "[T] he actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure." *Gonzalez–Gonzalez,* 257 F.3d at 38. In a challenge to the adequacy of notice under CAFRA, the Court must determine whether the government provided appropriate notice of the seizure and the forfeiture proceedings in sufficient time to meet the requirements of the Due Process Clause. *See Mesa Valderrama v. United States,* 417 F.3d 1189, 1196 (11th Cir.2005) ("individuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard."). The government relies on unpublished decisions to support its argument that knowledge of the seizure is sufficient to defeat CAFRA relief, but neither of these cases ruled that notice of the seizure was sufficient to comport with established due process requirements.

### 3. *Reasonableness of Notice*

■■■ The government asserts that it took "reasonable steps" to provide Plaintiff with the necessary notice. Analysis of the adequacy of notice in a due process inquiry focuses on whether the notice given was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In reviewing the adequacy of governmental notice with respect to a pre-CAFRA forfeiture, the Supreme Court concluded that *"Mullane* supplies the appropriate analytical framework." *Dusenbery v. United States,* 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). The government need not engage in exhaustive or wasteful attempts at notification, but its efforts must nonetheless be "reasonably designed to apprise the parties in interest of the currency of the forfeiture action. This depends, in turn, on what information was reasonably available to the government when it commenced the forfeiture proceeding." *One Star Class Sloop,* 458 F.3d at 23 (citations omitted). "[I]n general, ... when the government knows or easily can ascertain the identity and whereabouts of a potential claimant, reasonableness requires the government, at a minimum, to take easily available steps in its attempt to notify the claimant." *Id. See also Jones v. Flowers,* 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (holding that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.").

■■■ After the DEA's original notice to Plaintiff was returned marked "addressee unknown," the DEA was required to make reasonable efforts to ascertain Plaintiff's current address before forfeiting the money. Because the Plainville Police Department plainly knew Plaintiff had been registered at the Arbor Inn from January 2004 to the date of the initial seizure, the DEA could with minimal effort have discovered this 900 Washington Street address simply by re-contacting the police or re-reading the police report about the seizure. There is no evidence this was done. Moreover, while the government now puts forth evidence from public records that Plaintiff had a post office box and another listed address in Attleboro, no effort was made to send notice to these addresses either. Because the government did not take reasonable steps to discover Plaintiff's address, its efforts to notify Plaintiff of the

forfeiture failed to meet the requirements of due process.

 The government's argument that publication notice was sufficient also fails. Although publication notice can satisfy constitutional requirements in some circumstances, it is generally insufficient when the government has, or can easily obtain, additional information regarding the location of the claimant that would be easy to utilize. *See One Star Class Sloop,* 458 F.3d at 23; *see also Mullane,* 339 U.S. at 318, 70 S.Ct. 652. Given the ease with which the government could have obtained his current address, Plaintiff's circumstances do not rise to the level "where it is not reasonably possible or practicable to give more adequate warning[,]" such as "in the case of persons missing or unknown." *Mullane,* 339 U.S. at 317, 70 S.Ct. 652. Besides, it strains credulity to argue that a fine-print notice in *The Wall Street Journal* is reasonably calculated to give a man living out of suitcases in a local dive notice of a forfeiture. At the very least, a local paper should have been used. Because the government did not take reasonable steps to provide Plaintiff with notice and Plaintiff did not know of the forfeiture proceedings in time to have an opportunity to file a claim, this Court sets aside the declaration of forfeiture without prejudice to the right of the government to commence a subsequent forfeiture proceeding.

The government also argues that Plaintiff knew from his parents that the DEA had taken the money and sat on his rights. However, laches is an affirmative defense. *Gonzalez–Gonzalez,* 257 F.3d at 38.

### IV. ORDER

The government's second motion to dismiss [Docket No. 20] is *DENIED* and Plaintiff's motion for summary judgment [Docket No. 24] is *DENIED* with respect to his challenge to the seizure on the mer-

its and *ALLOWED* with respect to his challenge to notice. The motion for return of seized property pursuant to Rule 41(g) is *DENIED* without prejudice. The forfeiture is set aside without prejudice.