# United States Court of Appeals
## For the Second Circuit

August Term 2023

Submitted:   February 5, 2024
Decided:   November 26, 2024

No. 22-639

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ANDREW DAVIS, a.k.a. Steven Williams, a.k.a. Andrew
Carter, a.k.a. Cordel Freckleton, a.k.a. Jeremy Belk,
a.k.a. Big Man,

*Defendant-Appellant.*[*]

Appeal from the United States District Court
for the District of Connecticut
No. 17-cr-26, Alvin W. Thompson, *Judge.*

Before:   LEVAL, CARNEY, and SULLIVAN, *Circuit Judges.*

Andrew Davis appeals from his conviction after trial for conspiracy to
distribute and to possess with intent to distribute marijuana; possession with
intent to distribute marijuana; possession of firearms in furtherance of a drug

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

trafficking crime; and conspiracy to commit money laundering. On appeal, Davis – through counsel – contends that the evidence presented at trial was insufficient to support his conviction for conspiracy to commit money laundering. Separately, Davis raises ten additional arguments across two supplemental briefs filed *pro se*. We conclude that the evidence at trial was sufficient to support Davis's conviction for conspiracy to commit money laundering, and we further conclude that Davis's *pro se* arguments either lack merit, have been forfeited, or are premature. Accordingly, we affirm the district court's judgment.

Judge Sullivan concurs in a separate opinion.

AFFIRMED.

> Jamesa J. Drake, Drake Law, LLC, Auburn, ME,
> Andrew Davis, *pro se*, Ayer, MA, for *Defendant-Appellant*.
>
> Jessica Casey, Sandra S. Glover, Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee*.

PER CURIAM:

Andrew Davis appeals from the March 18, 2022 judgment of the district court (Thompson, *J.*) following his conviction at trial for conspiracy to distribute and to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846; possession with intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); possession of firearms in furtherance of a drug trafficking

crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (c)(2); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (h). The district court sentenced Davis to 295 months' imprisonment. On appeal, Davis – through counsel – contends that the evidence presented at trial was insufficient to support his conviction for conspiracy to commit money laundering. Separately, Davis raises ten additional arguments across two supplemental briefs filed *pro se*. We conclude that the evidence at trial was sufficient to support Davis's conviction for conspiracy to commit money laundering, and we further conclude that Davis's *pro se* arguments either lack merit, have been forfeited, or are premature. Accordingly, we affirm the district court's judgment.

## I.  BACKGROUND

Working with a team of co-conspirators, Andrew Davis trafficked large quantities of marijuana for nearly a decade in Bridgeport, Connecticut. He had a consistent method:  travel to California to buy and package marijuana, ship it by FedEx to various addresses in Bridgeport, and then have his inside man at FedEx intercept the packages before delivery. Davis sold the trafficked marijuana in Bridgeport and out-of-state, often by the pound and sometimes in quantities as large as forty or fifty pounds. When he was finally arrested in 2017, he was found with over 136 pounds of marijuana, numerous handguns, and approximately

3

$412,000 in cash across his multiple apartments and his storage unit. One of his co-conspirators immediately began cooperating with the government, and Davis was convicted at trial on four counts of drug, firearms, and money laundering offenses. The district court sentenced him to 295 months' imprisonment.

On appeal, Davis contends that the evidence presented at trial was insufficient to support his conviction for conspiracy to commit money laundering. Davis has also submitted supplemental *pro se* briefs in which he argues that: (1) his counsel was ineffective in not challenging the conspiracy charges based on the applicable statute of limitations; (2) his counsel was ineffective in failing to argue that his drug offenses were not "drug trafficking crimes" as defined in 18 U.S.C. § 924(c)(2); (3) the evidence was insufficient to support his conviction for conspiracy to launder money (for a different reason than the one given in his counseled brief); (4) the evidence was insufficient to support his conviction for conspiracy to distribute and to possess with intent to distribute marijuana; (5) his drug convictions were duplicative in violation of the Double Jeopardy Clause; and (6) the district court's imposition of a four-level enhancement under the United States Sentencing Guidelines for his role in the offense was error. In his *pro se* reply brief, Davis adds still more arguments, including that: (7) a cooperator's

4

testimony at trial was fabricated and coached; (8) paying for necessities is not money laundering; (9) he was not a large-scale drug dealer; and (10) his counsel provided ineffective assistance by failing to show him the presentence report until shortly before sentencing.

## II. DISCUSSION

### A. Davis's conviction for conspiracy to commit money laundering was supported by sufficient evidence.

"We review preserved claims of insufficiency of the evidence *de novo*." *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021) (internal quotation marks omitted).[1]  Although our review is *de novo*, "we must view the evidence in the light most favorable to the government . . . credit[ing] every inference that the jury might have drawn in favor of the government." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (internal quotation marks omitted).  We will uphold the jury's verdict "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted). Upon reviewing the record, we conclude that sufficient evidence supported Davis's conviction for conspiracy to commit money laundering.

---

[1] At trial, Davis moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), which the district court denied.   He therefore preserved his insufficiency claim.

Section 1956(h) prohibits conspiracy to commit money laundering as defined in section 1956(a). Section 1956(a)(1) provides that a person is guilty of money laundering if he (1) "conducts or attempts to conduct . . . a financial transaction," (2) "which in fact involves the proceeds of specified unlawful activity," (3) while "knowing that the property involved in [the] financial transaction represents the proceeds of *some* form of unlawful activity," (4) "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1) (emphasis added).

Davis focuses on the second element, arguing that the government failed to introduce evidence sufficient to allow a reasonable jury to conclude that he conspired to conduct a financial transaction that "in fact involve[d] the proceeds of specified unlawful activity." *Id.* Davis contends that the government's evidence merely showed that his girlfriend used large amounts of cash to purchase vehicles, some of which were then employed in his drug trafficking operations. He argues that the government did not prove that the cash was in fact proceeds from his drug sales, and that the government's reliance on Davis's and his girlfriend's lack of legitimate income improperly shifted the burden of proof to

6

them to establish that the cash was derived from legitimate commercial activity. We are not persuaded.

At trial, the jury heard that Davis sold marijuana in bulk for approximately $1,000 per pound and that searches of his storage unit and apartments turned up approximately 136 pounds of marijuana and approximately $412,000 in cash. The jury also heard testimony from a cooperating witness that Davis was not employed and did not have the necessary credit or income history to rent the apartment in which he lived. The evidence at trial showed that Davis's girlfriend earned only eleven dollars per hour at her job and that her total quarterly wages ranged from $0 to $3,908.75; despite these modest earnings, the evidence further showed that she deposited cash totaling $59,129.50 into her bank account between January 2014 and November 2016. Finally, the jury heard that Davis's girlfriend used thousands of dollars of cash to make down payments on cars that Davis used in his drug trafficking operations, and that the subsequent loan payments on those cars were made using money orders. The trial record included no evidence whatsoever to rebut the obvious inference that the cash for those down payments and money orders came from the proceeds of Davis's drug trafficking operations.

While "the government is required to link the moneys in question to specified unlawful activities," we have expressly held that "this link can be made through circumstantial evidence." *United States v. Gotti*, 459 F.3d 296, 337 (2d Cir. 2006); *see also United States v. Viserto*, 596 F.2d 531, 536 (2d Cir. 1979) ("[P]roof of the availability of cash by defendants with no legitimate occupation is permitted as tending to show that it was derived from ill-gotten gains."). Here, the unrebutted circumstantial evidence was overwhelming. We conclude that a reasonable jury could have found beyond a reasonable doubt that the transactions in question "involve[d] the proceeds of specified unlawful activity," 18 U.S.C. § 1956(a)(1), and that Davis conspired to commit money laundering in violation of section 1956(h). The evidence was therefore sufficient to support his conviction for that offense.

**B.  Davis's *pro se* arguments likewise fail.**

In addition to the argument in his counseled brief, Davis raises ten arguments in *pro se* supplemental briefs. As discussed below, these arguments are either meritless, premature, or forfeited.

1.  *Davis's ineffective assistance of counsel claims are meritless or premature.*

"When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Tarbell*, 728 F.3d 122, 128 (2d Cir. 2013) (internal quotation marks omitted). We decide two of Davis's claims of ineffective assistance and decline to hear the third.

First, Davis contends that his counsel was ineffective in not challenging his conspiracy charges as time barred. But it is well settled that "failure to make a meritless argument does not amount to ineffective assistance." *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (alterations accepted and internal quotation marks omitted). Here, a statute of limitations defense would have been meritless. A conspiracy is not complete, and the applicable statute of limitations does not begin to run, "until the purposes of the conspiracy have been accomplished or abandoned." *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) (internal quotation marks omitted); *see Toussie v. United States*, 397 U.S. 112, 115 (1970). Davis was indicted in 2017 for conspiracies running from 2008 to 2017,

9

and the applicable statute of limitations was five years. *See* 18 U.S.C. § 3282(a). His conspiracy charges were therefore not time barred.

Equally meritless is Davis's assertion that his counsel was ineffective in failing to challenge his conviction for possession of firearms in furtherance of a drug trafficking crime on the grounds that his drug offenses were not drug trafficking crimes. *See Regalado*, 518 F.3d at 149 n.3. Conspiracy to distribute marijuana and possession with intent to distribute marijuana are both felonies punishable under the Controlled Substances Act, so they qualify as drug trafficking crimes under section 924(c). *See* 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 924(c)(2). Davis's attorney was not ineffective for failing to assert a baseless claim.

We decline to consider Davis's third claim – that his trial counsel provided ineffective assistance by not showing him the presentence report until shortly before sentencing – because the record is not developed on that issue. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (noting that in most cases an ineffective assistance claim is best considered in a section 2255 proceeding rather than on direct appeal). We dismiss the claim without prejudice to its inclusion in a section 2255 petition. *See Tarbell*, 728 F.3d at 129.

10

2. *The trial evidence was sufficient to support Davis's conspiracy convictions.*

Davis contends that the evidence at trial was insufficient to support his conviction for conspiracy to commit money laundering because the cash from his marijuana operations was not from a "specified unlawful activity." 18 U.S.C. § 1956(a)(1). But specified unlawful activity is a defined term that includes "dealing in a controlled substance or listed chemical," including marijuana. *Id.* § 1961(1); *see id.* § 1956(c)(7)(A); 21 U.S.C. § 802(6); *id.* § 812(c), Schedule I(c)(10). Davis's assertion that the proceeds from his marijuana operations were not from a "specified unlawful activity" is therefore contradicted by the statute.

Next, Davis contends that the evidence was insufficient to support his conviction for conspiracy to distribute and to possess with intent to distribute marijuana because the government's proof of an agreement was based on testimony by cooperating witness Paul Blake, which Davis claims was hearsay. But Blake's testimony that Davis agreed to sell certain quantities of marijuana was not hearsay, as it involved Davis's own statements made to Blake, was offered by the government against Davis, and was therefore the statement of an opposing party. *See* Fed. R. Evid. 801(d)(2). The law is clear that the testimony of a co-

11

conspirator, by itself, can be sufficient to support a conspiracy conviction. *See United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990).

> 3. *Davis's marijuana distribution convictions do not violate the Double Jeopardy Clause.*

Davis asserts for the first time on appeal that his convictions for possession with intent to distribute marijuana and conspiracy to distribute and to possess with intent to distribute marijuana are duplicative and therefore violate the Double Jeopardy Clause. But it is well settled that "a conspiracy to commit a crime is a separate offense from the crime itself." *United States v. Felix*, 503 U.S. 378, 391 (1992) (holding that conspiracy to manufacture methamphetamine was not the "same offen[s]e" for purposes of the Double Jeopardy Clause as attempt to manufacture methamphetamine); *see United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997) ("A conspiracy to commit a crime and the substantive crime itself are different offenses because each requires an element that the other does not."). Davis's argument that his conspiracy and substantive marijuana distribution convictions violate the Double Jeopardy Clause is therefore baseless.

*4. The district court did not commit plain error in applying a four-level enhancement for Davis's role in the offense.*

When calculating the applicable Sentencing Guidelines range for Davis, the district court increased Davis's offense level by four levels under section 3B1.1(a) to account for his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). His lawyer conceded at sentencing the existence of four co-conspirators, but Davis argues that this enhancement was erroneous because he did not exercise control over them. Davis raises this control argument for the first time on appeal, so we review the district court's application of the Guidelines for plain error. *See United States v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009).

We have held that "[a] defendant may be subject to a four-level enhancement [under section 3B1.1(a)] even if the defendant managed only one other participant." *United States v. Mi Sun Cho*, 713 F.3d 716, 722 (2d Cir. 2013). Here, the district court was presented with ample evidence establishing that Davis was the central figure in the drug trafficking operation, and that he managed, at the very least, his co-conspirator girlfriend by directing her to purchase cars and title them in her name. We see no error in the district court's application of the four-level enhancement for Davis's role in the offense, much less the "clear or

13

obvious" error required under the plain error standard. *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007).

> 5. *Davis's new arguments in his reply brief are forfeited.*

The additional arguments that Davis raises for the first time in his supplemental reply brief are forfeited. *See United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003). In light of the fact that we regularly apply this forfeiture rule to parties proceeding entirely *pro se*, we have no hesitation in applying it to Davis, who also had the benefit of appointed counsel. *See United States v. Karimu*, 470 F. App'x 45, 46 (2d Cir. 2012) (enforcing reply brief forfeiture rule against appellant proceeding with hybrid representation).

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

RICHARD J. SULLIVAN, *Circuit Judge*, concurring:

I write separately to address our Court's longstanding practice of permitting parties who are represented by counsel on appeal, as Davis is, to submit *pro se* briefs in addition to their counseled briefs. We are in the minority among our sister Circuits in allowing such so-called hybrid representation as a matter of course, despite its tendency to "muddy[] the waters" and, in my view, divert judicial resources. *United States v. Hage*, 74 F.4th 90, 94 (2d Cir. 2023) (chambers opinion of Nardini, *J.*).

"The requirement of representation by trained counsel . . . tends to benefit the appellant as well as the court." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 163 (2000). An attorney is "an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *In re Snyder*, 472 U.S. 634, 644 (1985) (internal quotation marks omitted). Lawyers bring "unique[] . . . skill and competence" to the decision of what arguments to press on appeal, benefitting both their clients and the court. *Ennis v. LeFevre*, 560 F.2d 1072, 1075 (2d Cir. 1977). Lawyers are bound by ethical rules: they may not "deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing

frivolous arguments." *McCoy v. Ct. of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988). Indeed, an attorney has a duty "to refuse to prosecute a frivolous appeal." *Smith v. Robbins*, 528 U.S. 259, 272 (2000) (internal quotation marks omitted).

To be sure, the Constitution guarantees a criminal defendant the right to forgo counsel entirely and represent himself at trial. *See Faretta v. California*, 422 U.S. 806, 807 (1975) (holding that a state cannot "constitutionally hale a person into its criminal courts and there force a lawyer upon him"); *see also* 28 U.S.C. § 1654 (allowing parties to proceed "personally or by counsel" "[i]n all courts of the United States"). Nevertheless, our caselaw is clear that "[a] defendant has a right *either* to counsel or to proceed *pro se*." *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016) (emphasis added) (citing *Faretta*, 422 U.S. at 834). He "has no right to hybrid representation, in which he is represented by counsel" yet "slip[s] into *pro se* mode for selected presentations." *Id.* (internal quotation marks omitted). While district courts have discretion to allow hybrid representation, *see United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), in practice, the district courts in our Circuit regularly deny such requests, *see, e.g.*, *United States v. Helbrans*, No. 19-cr-497 (NSR), 2022 WL 562930, at *7–8 (S.D.N.Y. Feb. 22, 2022); *United States v. Wilburn*, 19-cr-108 (MKB), 2021 WL 6143591, at *2–3 (E.D.N.Y. Dec. 30, 2021).

2

On appeal, the right of self-representation is not constitutional and is subject to the Court's rules. *See Martinez*, 528 U.S. at 161; 28 U.S.C. § 1654. Nevertheless, we regularly allow hybrid representation. In contrast, the majority of our sister circuits have either entirely prohibited supplemental *pro se* filings by represented parties or established strong presumptions against the practice. The Third, Fifth, and Eleventh Circuits have adopted local rules prohibiting represented parties from filing *pro se* supplemental briefs. *See United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012) (construing 3d Cir. L.A.R. 31.3); *United States v. Polidore*, 690 F.3d 705, 721 n.19 (5th Cir. 2012) (citing 5th Cir. R. 28.6); *United States v. Weathers*, 815 F. App'x 414, 422 n.16 (11th Cir. 2020) (discussing 11th Cir. R. 25-1). The Fourth, Sixth, and Tenth Circuits have established strong presumptions against hybrid representation on appeal. *See, e.g.*, *United States v. Miller*, 54 F.4th 219, 227 n.10 (4th Cir. 2022); *United States v. Wilder*, 87 F.4th 816, 821 (6th Cir. 2023); *United States v. Pemberton*, 94 F.4th 1130, 1144 n.11 (10th Cir. 2024). The Seventh, Eighth, and Ninth Circuits have in various cases stated that they do not allow hybrid representation on appeal, *see, e.g.*, *United States v. Oreye*, 263 F.3d 669, 673 (7th Cir. 2001); *United States v. Montgomery*, 701 F.3d 1218, 1220 n.2 (8th Cir. 2012); *United States v. Ortiz-Martinez*, 593 F. App'x 649, 650 n.2 (9th Cir. 2015), but, in practice, seem to allow it

3

with some frequency, *see, e.g.*, *United States v. Eads*, 729 F.3d 769, 775 (7th Cir. 2013);

*United States v. Miranda-Zarco*, 836 F.3d 899, 901–02 (8th Cir. 2016); *United States v.*

*Boykin*, 785 F.3d 1352, 1359 (9th Cir. 2015). The First and D.C. Circuits have, to my

knowledge, established no rules or presumptions against hybrid representation

and regularly consider *pro se* filings from represented parties. *See, e.g., United*

*States v. Gonzalez-Gonzalez*, 136 F.3d 6, 12 (1st Cir. 1998); *Waters v. Lockett*, 896 F.3d

559, 572 (D.C. Cir. 2018). Nevertheless, the D.C. Circuit has, at least on occasion,

refused to allow hybrid representation. *See Sturdza v. United Arab Emirates*, 281

F.3d 1287, 1293 (D.C. Cir. 2002).

There is good reason to be skeptical of hybrid representation. As already

noted, declining to consider *pro se* supplemental briefs on appeal "promotes

effective advocacy because it prevents counsel from allowing frivolous arguments

to be made by the client." *Turner*, 677 F.3d at 579. This winnowing generally

benefits the defendant, since "brief[ing] that raises every colorable issue runs the

risk of burying good arguments . . . in a verbal mound made up of strong and

weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). Moreover, the practice

of allowing hybrid representation has repercussions beyond the cases in which it

is requested. Judicial resources are not unlimited. To permit as a matter of course

a party to submit supplemental briefs on top of the briefs already filed by his counsel is to allow that party to unilaterally divert the Court's attention from other appeals. Our practice of granting such requests is effectively a loophole through our other procedural rules, such as page limits and filing deadlines, that function to allocate the Court's limited resources among the many deserving appellants who seek our review. While it is possible that denial of such requests to file supplemental *pro se* briefs will leave some appellants with the feeling that they have not been heard fully, there is no constitutional right to be heard on appeal at all, *see Abney v. United States*, 431 U.S. 651, 656 (1977), much less a right to pursue one's appeal unconstrained by the Court's basic ground rules.

To be clear, given our longstanding practice of granting such requests, I do not fault the Applications Judge for granting Davis's request in this case. Nor do I suggest that we should decline to consider Davis's *pro se* arguments now, since he submitted them with our Court's express permission. I fully join in the *per curiam* opinion, which resolves all of Davis's arguments – whether counseled or *pro se* – on the merits. I write separately only to take stock of where we stand relative to other Circuits in allowing hybrid representation and to express my view that, going forward, we should consider curtailing the practice. While litigants

5

undeniably have the right to counsel or to proceed *pro se,* it would seem to me "[o]bvious[] . . . those rights cannot be both exercised at the same time." *United States v. Mitchell,* 137 F.2d 1006, 1010 (2d Cir. 1943).